IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RODNEY N. CAFFEY

    Plaintiff,

v.                                           CIVIL ACTION NO.: 2:22-cv-542

PUBLIX SUPERMARKETS, INC., (PSI),
ITS AGENTS, FICTITIOUS PUBLIX
SUPERMARKETS, INC., ITS AGENTS,
CVS PHARMACY, INC., (CVS),
CVS PHARMACY, INC., AS SUCCESSOR TO CVS CAREMARK (CVSC),
CVS HEALTH CORPORATION, AS SUCCESSOR TO CVS CAREMARK (CHCC),
CVS HEALTH CORPORATION (CHC),
OHM LABORATORIES, INC.,
(A SUN – PHARMA COMPANY)
(also known as), OHM SUN PHARMAC., (OSP/OL),
SUN PHARMACEUTICAL INDUSTRIES LIMITED (SPIL), ITS AGENTS,
SUN PHARMACEUTICAL INDUSTRIES, INC., (SPI),
SUN PHARMACEUTICAL INDUSTRIES, INC., AS SUCCESSOR TO RANBAXY
PHARMACEUTICALS, INC.,(SRAN),

    Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, FILED ON BEHALF OF PUBLIX SUPERMARKETS, INC., (PSI)**

    **COMES NOW** Plaintiff, Rodney N. Caffey, and does hereby submits the following Reply in Support of opposition to Defendant Publix Supermarkets, Inc., ("PSI's") Motion for Summary Judgment. As grounds; the Plaintiff proffers the following:

A. The Plaintiff; does hereby Objects to the Defendants PSI'S Motion for Summary Judgment on the grounds that said motion is premature on its face; as there are pending Motions to Compel filed against: Defendants (PSI), (CVS), and (OHM). While the Plaintiff sat for a (7) hours long deposition, at the behest of (PSI), and (CVS), neither Defendant has provided Discovery responses required by the: A. R. C. P., and the F. R. C. P. Rule (26) Discovery, as of yet.

Any motion for summary judgment; at this premature juncture of the litigation, would be highly prejudicial to the Plaintiff's considering the aforesaid facts, would be highly prejudicial to the Plaintiff.

Additionally; any granting of a motion for summary judgment, considering the aforesaid facts, would indeed be an abridgment of the Plaintiff's First and Fourteenth Amendments to the Constitution of due process, under the law.

1. This is a Fraud case; which also is a: Medical malpractice, U. C. C. Implied Warranty of Merchantability, Failure to Warn and Products Liability case.

2. The Defendants, (PSI) and Megan Ingram sold the Plaintiff Mislabeled Atorvastatin (10) mg., NDC Number (63304-0827-90); which from then to now, does not exist.

The Defendants, (PSI) and Megan Ingram sold the Plaintiff Mislabeled Atorvastatin (10) mg., NDC Number (63304-0827-05); which from then to now, does not exist.

The Plaintiff has provided this Honorable Court with clear-cut special damages with documented medical records, from board certified doctors, who actually treated the Plaintiff in person, and provided as such, their medical records and notes, regarding the Plaintiff's treatment for the devastating after effects of the (05/23/20) sale of the aforesaid, mislabeled Atorvastatin (10) mg. Tabs to the Plaintiff.

3. None of the Plaintiff's claims against (PSI) fail as a matter of law.

4. The Plaintiff has presented numerous exhibits to this Honorable Court, and all other interested parties; and yet after nearly (4) years later, the Defendants (PSI) has continued to defy the Court, and confound the Plaintiff, by not adhering to the strict F. R. C. P. Rule (26) Discovery Guidelines regarding: truthful, literate, responsive and literate responses. (See Batch Exhibits: A; B; C; and F, filed contemporaneously, herewith).

5. There is well documented evidence that the Defendants (PSI) sold to the Plaintiff mislabeled drugs (Atorvastatin (10) mg. Tabs., NDC Numbers: (63304-0827-90), (63304-0827-05)); which only existed as banned/recalled defective Atorvastatin (the former), or non existent at all, from the time of the loss (05/23/20) (the latter), up until now.

The Plaintiff has indeed presented numerous exhibits and documents to this Honorable Court, clearly establishing that the Defendants (PSI); did breach their duty of the reasonable standard of care, for health professionals; as to the level of: reckless, willful, and negligent care, in which they offered to the Plaintiff; which has left him with severe, lifetime, preventable illnesses, but for the Defendants (PSI'S) aforesaid actions. (See Batch Exhibits: A; B; C; and F, filed contemporaneously, herewith).

6. The Plaintiff has presented numerous exhibits and documents to this Honorable Court which clearly shows that the Defendants (PSI) misfilled and sold mislabeled Atorvastatin (10) mg., NDC Number (63304-0827-90), non-existent from (05/23/20) loss, up until now.

The Defendants (PSI) also misfilled (10) mg., NDC Number (63304-0827-05) and sold the mislabeled Atorvastatin to the Plaintiff by Mid July 2020; which in actuality, according to Alabama Poison Control, was Glimepiride (4) mg. Tabs, instead.

7. The Plaintiff has presented numerous exhibits to this Honorable Court; documenting the ill-effects, that he has suffered, as a direct result of ingesting banned/recalled defective Atorvastatin (10) mg., tabs NDC Number (63304-0827-90) and/or Glimepiride (4) mg., during Mid July (2020), refill; which the Defendants (PSI) then clandestinely placed a (08/16/20) receipt for Glimepiride, in the Plaintiff's shopping bag.

8. As such Defendants {PSI'S} Motion for Summary Judgment is due to be DENIED.

9. This the Plaintiff's response to the Defendants (PSI'S) Motion for Summary Judgment is supported by all pleadings filed to date, a narrative summary of undisputed numerous documents and facts, the attached evidentiary submissions (and those previously heretofore filed with this Honorable Court) and a memorandum brief is being filed contemporaneously herewith.

## ARGUMENTS

I. **The Plaintiff has proffered Expert Testimony of the applicable Standard of Care; therefore his claims against Defendants (PSI) are not due to be dismissed.**

In <u>Morgan v. Publix Supermarkets, Inc.,</u> 138 So. 3D 982, 987 (Ala. 2013) The Court held in pertinent part, that "Where want of skill or lack of care is so apparent," that only "common knowledge and experience," are required to evaluate the Plaintiff's allegations.

a) Defendants (PSI), Pharmacist, Megan Ingram, and Pharmacy Technician, "Katherine," sold Atorvastatin that had been recalled in (2014);

b) Defendants (PSI), Pharmacist, Megan Ingram, and Pharmacy Technician, "Katherine," sold Plaintiff (20) mg., Atorvastatin tablets, rather than the (10) mg., tablets, which were listed on the affixed label, by said (PSI) Defendants;

c) Defendants (PSI'S) Experts proffered testimony from: Burke; Heritage; and Madonia; which amount to mere hearsay testimony, as neither of said Experts offered undisputed testimony; which was cross examined, and given under oath, and as a result are not reliable, and at the very least; are unsubstantiated opinions, the veracity of which; are clearly questions to be determined by the triers of facts, not as a matter of law.;

d) The "complex" allegations against the Defendants (PSI), Pharmacist, Megan Ingram, and Pharmacy Technician "Katherine" of: Fraud, Forgery, Perjury, and 21 U. S. C. violations (Sales of Mislabeled Drugs) are simplified upon a comprehensive review of the overwhelming evidence proffered in Batch-Exhibit-F; which proves that the Plaintiff's injuries are in no way connected to the condition for which the Plaintiff sought treatment.

Dr. Guard (USG-1), had prescribed (4) diabetic control medicine simultaneously; The Plaintiff's cholesterol levels were never a problem, and has not been a problem since the Atorvastatin overdose, since (HSI) Dr., Sparks switched the Plaintiff's cholesterol control

drug to Zetia, which is a non-statin drug.

e) All of the Defendants (PSI'S) Expert Witnesses: Burke, Heritage, and Madonia; each, openly admitted that they only relied on the following Exhibits: A, B, and C (no medical records), as the basis for determining their respective Expert Opinions:

A.   The Amended Complaint dated (July 11, 2023) (however; there is currently a pending Plaintiff's Motion for Leave of Court to Amend Complaint to Reinstate/Add Remaining Defendants);

B.   The (PSI) Document stamped Bates (1-57) (however; See Plaintiff's Batch Exhibit-B, Exhibit-C, where Defendants (PSI'S) proffers, with their Rule (26) Initial Disclosures to the Court, forged signatures regarding their counseling of the (05/23/20) (non-existent/ recalled Atorvastatin) and Metformin also sold, with forged counseling affirmations of the Plaintiff's signatures on (05/23/20)).

Defendants (PSI) and Pharmacist, Megan Ingram, on (09/03/20) redacted the sale of the Mid July fraudulent Atorvastatin refill, which the Defendants (PSI) had given a receipt dated on (08/16/20); even though they had given sworn testimony that they did not sell or fill any Atorvastatin after (05/23/20), or know anything about said (08/16/20) Atorvastatin refill receipt; and yet, (Defendants) (PSI'S) electronic record clearly shows (PSI) Pharmacist, Megan Ingram redacting said sale; even though Defendants (PSI'S) sworn testimony states the contrary, "did not redact any sale" perjury statement.

C.   The recall information for Atorvastatin for the years (2012-2020) (however; it is the Defendants (PSI) who has offered to seek protection under the Alabama COVID-19 Immunity Act (See Plaintiff's Batch Exhibit-A; Exhibits; x and u)).

II. The Plaintiff has proffered Expert Testimony that Defendants (PSI), Pharmacist, Megan Ingram, and Pharmacy Technician, 'Katherine," breach of the Standard of Care probably caused his injuries; therefore, the Plaintiff's claims against Defendants (PSI) are not due to be dismissed.

The Plaintiff has provided an Expert's Testimony to show that Defendants (PSI), Pharmacist, Megan Ingram, and Pharmacist Technician "Katherine," breach of the aforesaid Standard of Care; Probably, not possibly caused the Plaintiff's injuries.

The Plaintiff has provided evidence supporting his claim that taking (20) mg., mislabeled, recalled Atorvastatin tablets, rather than the (10) mg.,Atorvastatin which was mislabeled by the Defendants (PSI), Pharmacist, Megan Ingram, and Pharmacist Technician "Katherine," probably caused his injuries and current medical condition (See Plaintiff's Batch Exhibits: B and F).

The Defendants (PSI), Pharmacist, Megan Ingram, and Pharmacist Technician, "Katherine," has exhibited: careless, reckless, and the lack of requisite skill; in their

breaching of the Standard of Care for: Pharmacists, and Pharmacy Technicians, by their dispensing of:

a) Mislabeled, recalled/defective alleged Atorvastatin (10) mg., tablets to Plaintiff, on (05/23/20); and by their dispensing the Metformin to Plaintiff, also on (05/23/20), and subsequently forging the Plaintiff's signature, authorizing that he had consented to counseling of the aforesaid questionable Atorvastatin and Metformin prescriptions;

b) Mislabeled, non-existent alleged Atorvastatin (10) mg., tablets, sold to Plaintiff during Mid-July 2020; but was given a receipt of purchase by the Defendants (PSI), dated on (08/16/20) (See Batch Exhibit-B, Exhibit-R); the same dated as the twice redacted alleged Metformin purchase, despite the Defendants (PSI) sworn testimony, to the contrary;

c) Dr. Guard (USG-1) prescribed: mislabeled, recalled/defective alleged Atorvastatin (10) mg., tablets; which did not exist; but the Defendants (PSI) and their agents, nevertheless substituted the non-existent Atorvastatin, with the recalled/defective Atorvastatin;

d) Dr. Guard (USG-1) prescribed: mislabeled, non-existent Atovorvastatin (10) mg., refill that was sold to Plaintiff during Mid-July 2020, but was given a receipt of proof of purchase by the Defendants (PSI), on (08/16/20);

Although the Defendants (PSI), in their sworn testimony stated that they have no knowledge of said Atorvastatin refill sale to Plaintiff, their Rule (26) Initial Disclosures, and their internal sales logs, reveal redactions by (PSI) Pharmacist, Megan Ingram, and other (PSI) agents;

e) Dr. Guard (USG-1) prescribed Glimepiride for Plaintiff; however, Defendants (PSI) did not dispense the medication: correctly, carefully, and with the requisite level of skill in (a-e), above; thus breaching the applicable standard of care for: Pharmacists, and Pharmacy Technicians.

f) Defendants (PSI'S) Medical Expert, Dr. Madonia's testimony is that the Plaintiff's testimony is that the Plaintiff's injuries and current medical condition are not related to taking (20) mg., Atorvastatin, rather than (10) mg., Atorvastatin, or recalled/defective, Atorvastatin, or Glimepiride, rather than Atorvastatin (10) mg.tablets.

If Dr., Madonia had reviewed any of the Plaintiff's medical records; provided by the Plaintiff, to the Defendants (PSI); instead of relying on apparent "second-handed" hearsay, then he would have known that the Plaintiff's Type II diabetes had been well controlled ever since its diagnosed onset, in (2006); and that the Plaintiff's spike in his (A1C) levels were an aberration, brought upon in part; by the anxiety and consternation attributed to the "global chaos" exigencies, associated with the COVID-19 epidemic..

Plaintiff's medical records clearly shows that his kidney functions index (egfr) was (89%) (90%) is normal; prior to his (05/23/20) ingestion of the recalled/defective Atorvastatin

tablets, sold to him by the Defendants (PSI), and their agents.

Plaintiff's medical records clearly shows that his kidney functions index (egfr) was (51%); On (07/21/21), prompting C. R. N. P. Sankey, former (HSI), (USG-2), healthcare provider, to call the Plaintiff by phone, in the late evening; expressing that he was concerned, about the Plaintiff's kidneys and organs.

In Ex Parte Perry, 586 So. 2d 242 (Alabama); the Court highlighted the necessity for expert testimony to be relevant to a material issue in the case, emphasizing the importance of linking the expert's insights to the facts at hand.

F. R. E. (702) (DAUBERT):

1. The testimony is based upon sufficient facts or data: Defendant (PSI'S) Medical Expert, Dr. Madonia is a nephrologist (not a general practitioner) with very limited practical experience; who never met once with the Plaintiff, or directly reviewed any of the Plaintiff's medical records;

2. The testimony is the product of reliable principles and methods: Dr. Madonia has never met the Plaintiff, and only listed "second-handed" sources to make non-scientific assertions about the Plaintiff's medical conditions.

Dr. Madonia apparently does not know that there is currently; no FDA: cure or treatment for rhabdomyolysis; and that the Plaintiff's Neurologist, Dr. David Lipscomb diagnosed the Plaintiff with rhabdomyolysis in his Doctors Notes; which had been provided to the Defendants (PSI), on numerous occasions.

3. The witness has applied the principles and methods reliably to the facts of the case: If Dr. Madonia had consulted with a Neurologist that treats patients with high CK levels and rhabdomyolysis, then he would have learned that rhabdomyolysis is often chronic, and is presently incurable.

4. The Expert's Opinion reflects a reliable application of the principles and methods to the facts of the case: Dr. Madonia's lack of a credible basis for his methodology and/or, lack, thereof, and his apparent biases toward the Defendants (PSI'S) interests; renders any straining that his Expert Opinion in the case at hand, reflects a reliable application of the principles and methods; to the facts of the case, is ludicrous.

## EVIDENTIARY SUBMISSIONS

*(BATCH EXHIBITS: A, B, AND F) were previously heretofore filed with this Honorable Court, on (06/06/25). The complete contents of the aforementioned Batch Exhibits: A, B, and F, are available at the Court's Procedural Record, for further review.*

BATCH EXHIBIT-A

a) Plaintiff's original Complaint- General Allegations (filed at the Montgomery County, Alabama Circuit Court), clearly delineate the first sale of mislabeled Atorvastatin (10) mg., tabs to Plaintiff, occurred on (05/23/20), causing injury to the Plaintiff;

b) Plaintiff's Complaint – General Allegations, filed in this Honorable Court clearly delineate the first sale of mislabeled Atorvastatin, occurred on (05/23/20), causing injury to the Plaintiff;

c) Defendants (CVS'S) Reply in Support of Motion to Dismiss, filed on (10/31/22); wherein Defendants (CVS) acknowledged that the Plaintiff's claim of the purchase of mislabeled Atorvastatin (10) mg., occurred on (05/23/20);

d) Defendants (PSI'S) Opposition to Plaintiff's Motion to Amend, filed on (12/16/24), wherein Defendant (PSI) acknowledged that the Plaintiff's claim for his purchase and ingestion of mislabeled Atorvastatin (10) mg., causing him injury, "occurred between May and July 2020 [Doc 73 p. 16];

e) This Honorable Court on (11/21/24) issued an ORDER allowing the Plaintiff through (12/02/24) to supplement the pending (Motion for Leave of Court to Amend Complaint) with a copy of the proposed amendment;

f) This Honorable Court on (12/30/24) ORDERED (OHM) to file a reply to Plaintiff's response, regarding the unwillingness for (OHM) to provide; either the exculpatory, or incriminating response to the Subpoena Duces Tecum filed against them, by the Plaintiff;

g) Plaintiff's first set of proposed interrogatories to (USG-1) (Dr. Guard);

h) Plaintiff's first set of proposed interrogatories to (USG-2) (HSI);

I) Plaintiff's first set of proposed interrogatories to former (PSI) pharmacist, Megan Ingram;

j) Plaintiff's Response to Court Disclosure of Expert Testimony ORDER Medical Malpractice Expert, Dr. Larry Williams;

k) Plaintiff's Response to Court Disclosure of Expert Testimony ORDER, Forensic Handwriting Expert, Steven G. Drexler; confirming that Defendant (PSI) forged the Plaintiff's signature, when they misrepresented that Defendants (PSI) counseled Plaintiff, on the usage of the (05/23/20) mislabeled Atorvastatin (10) mg., tabs; as well as the Metformin tabs, sold to Plaintiff on the same (05/23/20) date;

l) Proposed written interrogatories for Defendant Expert Pharmacist, Darden Heritage;

m) Proposed written interrogatories for Defendant Expert Pharmacy Technician, Dixie Burke;

n) Proposed written interrogatories for Defendant Expert Medical Doctor, Phillip Maidonia;

o) Questions for (OHM);

p) 21 U. S. C. 331 Sale of Mislabeled Drugs- Criminal Treatise;

q) Plaintiff's (6/6/25) Motion to Compel against (OHM);

r) Plaintiff's (6/6/25) Motion to Compel against Defendants (CVS);

s) Plaintiff's (6/6/25) Motion to Compel against Defendants (PSI).

t) Paragraph (86) of the Plaintiff's Amended Complaint (a-k) documented counts of (PSI'S): Mislabeled sales of drugs, Forgery, Perjury and Fraud;

u) Defendants (PSI'S) Response to Plaintiff's First Set of Interrogatories; where Defendants (PSI) swore under oath that "they did not redact any sales;"

v) Plaintiff's Response to Defendants (PSI'S) Opposition to Plaintiff's Motion for Leave of Court to Amend (which is currently pending);

w) Defendants (PSI'S) Brief in Support of Motion for Summary Judgment; where Defendants (PSI) insists that they are entitled to Immunity Under the Alabama COVID Immunity Act: (ACIA); (ACIA Section 792); Section 794); and (ACIA Section 794); and Section 793), just in case nothing else works out, despite the (ACIA) declining to offer COVID immunity to those committing criminal acts like: Forgery; Fraud; Perjury; violations of 21 U. S. C. 331 (the sale of

mislabeled drugs), looting, etc.;

x) Plaintiff's deposition obtained by Defendants: (PSI), and (CVS); whereby Defendants (PSI'S) counsel, declares half-heartedly that they (are not trying to wiggle out of anything, but…" regarding the Defendants (PSI'S) attempting to gain information from the Plaintiff; ostensibly to bolster their flawed Alabama COVID Immunity Act (ACIA) defenses;

y) ORDER directed from the U. S. District Court for (OHM0 to provide information regarding the shipping of Atorvastatin (10) mg., tabs to the Defendants (PSI'S) Store #1027, for the (5) year period in question, (OHM0 has thus far refused to comply with the Court's ORDER, or F. R. C. P. Rule (26) Discovery, regarding the matter.

Additionally; Defendants (PSI) have also refused to answer the same question; in complete derogation of F. R. C. P. Rule (26) Discovery, regarding the matter thus far;

z) Plaintiff's Motion and Brief in Opposition to Motion for Summary Judgment, filed on behalf of Publix Supermarkets, Inc., (PSI).

## BATCH EXHIBIT-B

A) (HSI) (USG-2), CRNP, Jonathan Johnson (11/08/18), (01/02/19); Atorvastatin (10) mg., tab; NDC Number: (63304-0827-05); (30) days quantity; mfg., Ranbaxy Pharmac; (egfr) on (11/08/18) = (88.6) (90.0) was normal;

B) Atorvastatin (10) mg., NDC Number: (63304-0827-05); (90) days quantity; mfg., OHM-Sun Pharmac, did not, and does existed, what did exist, was NDC Number: (63304-0827-90), illegally, at and around the time of loss;

C) Defendants (PSI'S) Rule (26) Initial Disclosures presented to this Court;

D) Plaintiff's (7/11/23) Amended Complaint;

E) Defendants (CVS'S) Exhibit-C Motion to Dismiss (09/22/22): A statement on the Ranbaxy Atorvastatin Recall;

F) Defendants (CVS'S) Exhibit-D, Motion to Dismiss (09/29/22): FDA Recall of Atorvastatin (10) mg., (90) count tablets per bottle, RX only manufactured for Ranbaxy Pharmaceuticals, Inc.; presence of foreign tablets: a product complaint was received b y a pharmacist who discovered an Atorvastatin (20) mg. Tab. Inside a sealed bottle of (90) count Atorvastatin (10) mg.;

G) Defendants (CVS'S) Supplement to Motion to Dismiss (09/29/22): Plaintiff's Defendants (PSI'S) Pharmacy Customer Statement for Atorvastatin (100 mg., from (01/18/18) – (04/17/19) NDC Number: (63304-0827-05) (30) days quantity supply; afterwards Ranbaxy was shut down , by the FDA. On (5/23/200 NDC Number: (63304-0827-05) (90) days quantity, did not, and does not exist.

I) Defendants (CVS'S) Objection to Plaintiff's Motion to Amend Complaint; wherein Defendants (CVS) acknowledged what Plaintiff thought was (o8/16/20) Atorvastatin (100 mg., refill, was in actuality, Glimepiride (4) mg.;

J) Defendants (CVS'S) Exhibit-F (09/29/22) Motion to Dismiss; Plaintiff's pharmacy profile, at the Defendants' (PSI'S) Pharmacy;

K) (05/23/20) Receipt for purchase of Atorvastatin (10) mg.; NDC Number (63304-0827-05) (90) days quantity; mfg., (OHM): sold to Plaintiff b y Defendants (PSI), but mislabeled Atorvastatin (10) mg., tabs did not exist then, or now;

L) (08/16/20) Receipt for purchase of "alleged" Atorvastatin NDC Number: (63304-0827-05) (30) days quantity; mfg., (OHM), sold to Plaintiff by Defendants (PSI), but did not exist then, or now;

M) (05/23/20) Receipt for purchase of Glimepiride (4) mg., authorization from Dr. Guard (USG-1) to Defendants (PSI) and Megan Ingram for (08/21/20) refill of Glimepiride (4) mg., which Defendants (PSI) swore under oath, did not exist;

N) Receipts for purchases of Atorvastatin (10) mg., (then in existence) NDC Number: (63304-0827-05); (30) days quantity; mfg.; Ranbaxy Pharmac (11/18/19), (01/02/19), (02/08/19);

O) (NDC list) verified Atorvastatin (10) mg., tabs; NDC Number: (63304-0827-90) does not exist, or is not available;

P) Photos of what was left of the "alleged' (08/16/20) refill; which is actually Glimepiride (4) mg., according to Poison Control of Alabama;

Q) Receipt of Atorvastatin (10) mg., tabs; NDC Number (63304-0827-05) , sold to Plaintiff on (05/23/20), but did not exist at the time, or since;

R) Receipt for (08/16/20) alleged Atorvastatin (10) mg., tabs; NDC Number: (63304-0827-05); quantity (30) days; mfg.; (OHM), was sold to Plaintiff in Mid July 2020, but was actually Glimepiride (4) mg. Tabs;

S) Approved prescription authorization for Glimepiride (4) mg., refill; which Defendants (PSI) swore under oath, did not exist. Receipt for (05/23/20) Metformin purchase which Defendants (PSI) misrepresented to the Court, with their Rule (26) Initial Disclosures, that they counseled with the Plaintiff, regarding the (05/23/20): Metformin, and Atorvastatin prescriptions; however, Defendants (PSI) forged the Plaintiff's signatures on both false acknowledgements;

T) Receipt of purchases (Mastercard) from Former (PSI) pharmacy manager, Megan Ingram and Defendants (PSI); which identified: RX#701764 (Metformin) allegedly refilled on (08/16/20); but nevertheless was redacted by Defendants: (PSI), Pharmacist, Megan Ingram and Pharmacy Technician, "Katherine" on (08/31/20);

U) Receipt of purchase (Mastercard) from Former (PSI) pharmacy manager, Megan Ingram and Defendants (PSI);

V) Defendants (PSI'S) internal sales log, which identified RX#7017064 (Metformin) allegedly filled 0n (08/16/20), and paid for on (08/19/20);

W) Defendants (PSI'S) internal sales log showing whited-out redaction of (08/21/20) sales of "mystery drugs" (Atorvastatin/Metformin/Glimpiride) refills; which Defendants (PSI), repeatedly swore to in their responses to Plaintiff's Interrogatories propounded to them, that they "did not redact any sales."

## BATCH EXHIBIT-F

D-1) NDC Number: (63304-08270 Atorvastatin Calcium Label Information Tablet, Film Coated Oral-Details Usage and Precautions Treatise;

D-2) (08/14/20) Jackson Hospital E. R. Doctor Amanda Bailey confirmed CK spike, Myositis, and Atorvastatin overdose;

D-3 (09/08/20) The Jackson Clinic; CRNP, Hailey Kennedy confirmed CK spike, Myositis, and Atorvastatin overdose

D-4) Dr. Guard (USG-1) Notes and Reports;

D-5) CRNP, Isaiah Sankey (HSI) (USG-2) phoned the Plaintiff on (07/16/21) to express that he was concerned about my kidneys and organs, Plaintiff's egfr had dropped to (.51), within days Mr. Sankey was no longer employed at (HSI);

D-6) CRNP, Chavonna Moore (HSI) (USG-2) confirmed CK spoke; attributed it to Atorvastatin overdose, referred the Plaintiff to specialists for treatment;

D-7) Neurologist, Dr., Larry Epperson, and CRNP, Paige Harris diagnosed stroke, CK spike, embarking on a treatment regimen, that was aimed at lowering the Plaintiff's CK ratio;

D-8 Neurologist Dr., Gregory Lipscomb, confirmed that the Plaintiff had Rhabdomyolysis;

D-9 Nephrologist, Dr., Chua'sNotes and Reports. Dr. Chua left her practice some time ago; and was replaced by CRNP Kaitlin Sparks;

D-10 Orthopedist, Dr. Michael Davis provided x-ray imaging of before (2019) and after (2021) of the Plaintiff's lumbar and thoracic spinal curvature; brought upon by stroke to right side of the Plaintiff's body;

D-11 Healthmark Group: The Plaintiff wore an event monitor for palpitations and arrythmia following (05/23/20) Atorvastatin overdose, and CK spike;

D-12 Dr. Daniel Daly Surgeon who performed biopsy on the Plaintiff's right thigh, diagnosed Myositis. Rheumatologist Dr., Jakes treated the Plaintiff with Methotraxate, until the Plaintiff sought a second opiniom;

D-13 Dr. Pooja Poudel, Rheumatologist also treated the Plaintiff with Methotraxate, however the side effects of the Methotraxate, caused the Plaintiff to seek treatment for incurable disease, caused by the Atorvastatin overdose, elsewhere;

D-14 Otolaryngologist, Dr., Andrew Ford confirmed tinnitus diagnosis;

D-15 Orthodontist, Dr., Scott Harris performed all of the restorative dental work to enable the Plaintiff to receive a Temporamandibular Joint Disorder (TMD) diagnosis;

D-16 Orthodontist, Michael Maniscalco, DMD, confirmed the Plaintiff's TMD disorder.

## CONCLUSION

**The Plaintiff has provided Expert Testimony and evidence showing Defendants (PSI) and their Agents breach of the standard of care probably caused his injuries; therefore, Defendants (PSI'S) Motion for Summary Judgment is due to be DENIED. (See F. R. C. P. Rule (56)).**

**The Plaintiff has provided Expert Testimony: establishing the Standard of Care; and the subsequent breach of the standard of care. He has presented Expert Testimony showing that the Defendants (PSI'S) breach of the standard of care probably caused his injuries.**

**Therefore; the Plaintiff's claims against Defendants (PSI), and their Agents, are not due to be dismissed, and that Defendants (PSI'S) premature Motion for Summary Judgment is due to be DENIED.**

**WHEREFORE,** based on this the: Plaintiff's Reply in Support of Motion in Opposition to Defendants (PSI'S) Motion for Summary Judgment, and evidentiary materials attached in support thereof, and previously heretofore filed, with this Honorable Court; the Plaintiff respectfully requests that this Honorable Court grant his Motion in Opposition, and declare that the movant Defendants (PSI) is not entitled to Summary Judgment against the Plaintiff.

Respectfully submitted on this the 28th day of August 2025.

_____
Rodney Newman Caffey

Pro Se Attorney for Plaintiff

**ADDRESS OF COUNSEL:**

1606 Woodmere Loop
Montgomery, AL 36117
Telephone: (334) 544-7219
E-mail: rodneycaffey86@gmail.com

_____
Rodney N. Caffey

I certify on August 28, 2025, that I served a copy of this document and any attachments on counsel: via electronic filing or by placing same in the United States Mail, properly addressed and first-class postage prepaid to the following counsel of record:

Margaret H. Clanton, Jansen. Voss, Christian &Small, 505 North 20th Street; Suite 1800, Birmingham, AL 35243,

James A. Sydnor, Jr., Huie, Fernambucq & Stewart, LLP, Three Protective Center; 3291 US Highway 280; Suite 200, Birmingham, AL 35243.

_____
Rodney N. Caffey (Pro Se Plaintiff)